AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

**US DISTRICT COURT**
**WESTERN DIST ARKANSAS**
**FILED**

for the

Western District of Arkansas

**APR 19 2019**

**DOUGLAS F. YOUNG, Clerk**

By _____

Deputy Clerk

|  |  |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No. 5:19 CM-43 |
| THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 414-477-0082 and IMEI 354843093618804 | ) |
| | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A. This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

located in the ____unknown____ District of _____, there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Distribution, Possession With Intent to Distribute Controlled Substances (methamphetamine) |
| 21 U.S.C. 846 | Conspiracy |

The application is based on these facts:
See Attached Affidavit of FBI SA Brenan T,. Despain.

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.
**30 days is intended to be from the termination of the collection of data.

_____
*Applicant's signature*

FBI SA Brenan T. Despain
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __4/19/19__

_____
*Judge's signature*

City and state: Fayetteville, Arkansas

Hon. Erin L. Wiedemann, U.S. Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

**Property to Be Searched**

1.  The cellular telephone assigned call number 414-477-0082, with International Mobile Subscriber
    Equipment (IMEI) number 354843093618804, whose wireless service provider is VERIZON WIRELESS,
    180 Washington Valley RD, Bedminster, NJ 07921.

2.  Information about the location of the target cell phone that is within the possession, custody or control of
    VERIZON WIRELESS.

3.  Authorization given is intended to apply not only to the target telephone number listed
    above, but also to any other IMSI, IMEI, or ESN number accessed through the target
    telephone number referenced above, within the forty-five day period.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the target cell phone described in Attachment A for a period of forty-five days, during all times of day and night. "Information about the location of the target cell phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of **VERIZON WIRELESS,** VERIZON WIRELESS is required to disclose the Location Information to the government. In addition, VERIZON WIRELESS must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with VERIZON WIRELESS's services, including by initiating a signal to determine the location of the Target Cell Phone on VERIZON WIRELESS's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate VERIZON WIRELESS for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 414-477-0082 and IMEI 354843093618804 | Case No. 5:19 CM _____<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

1.    I, BRENAN T. DESPAIN, Special Agent of the Federal Bureau of Investigation

(FBI), being duly sworn, depose and state that:

### INTRODUCTION

2.    I am an investigative or law enforcement officer of the United States, within the

meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct

investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United

States Code.

3.    I have been a Special Agent with the FBI since June of 1999.  I am currently

assigned to the Fayetteville Resident Agency.  In connection with my official FBI duties, I

investigate criminal violations of the Controlled Substances Act.  My training and experience has

involved, among other things, (a) the debriefing of defendants, witnesses, and informants, as well

as others who have knowledge of the distribution and transportation of controlled substances, and

of the laundering and concealment of proceeds of drug trafficking; (b) surveillance; and (c)

analysis of documentary and physical evidence.  I have also received training in investigations

involving the interception of wire communications and have participated in investigations

involving the interception of wire and electronic communications.  Based on my training and

experience, I have become familiar with the manner in which narcotics traffickers conduct their

drug-related businesses, including the methods employed by narcotics dealers to import and

distribute narcotics.  I have been personally involved in several investigations involving the

unlawful possession, manufacture, and distribution of controlled substances, including methamphetamine. I was previously assigned to the FBI's San Francisco and Honolulu Field Offices, as well as FBI Headquarters in Washington, D.C. and the FBI Legat Office in Beijing, China. I have also been detailed to the U.S. State Department during the construction of a new U.S. Embassy overseas. I have completed TDY assignments overseas to China, Canada, Latvia, Lithuania, and Estonia where I participated in joint investigations and training of foreign law enforcement. I graduated from Brigham Young University in 1996 with a degree in Mandarin Chinese.

4.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 414-477-0082 (hereafter "cell phone", "target phone", or "target cell phone"), whose International Mobile Equipment Identity (IMEI) number is 354843093618804, and whose service provider is Verizon Wireless, a wireless telephone service provider. The target cell phone number account has been active since August 20, 2018, with a listed subscriber of Nabil MUSAID, 670 Sherard Cir, Lexington, KY, 40517. The target cell phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

5.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and as such does not set forth all of my knowledge about this matter, but rather only facts I believe are sufficient to establish the probable cause necessary to obtain authorization to track the target cell phone. Based on the facts set forth in this affidavit, Affiant submits there is probable cause to

2

believe that violations of 21 USC 841(a)(1) and 846 have been committed, are being committed, and will continue to be committed by Cruz MARSHALL and others. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of additional individuals who are engaged in the commission of these offenses in concert with Cruz MARSHALL.

## PROBABLE CAUSE

6.      In January of 2019, FBI Special Agent Brenan Despain along with investigators of the Springdale Police Department Narcotics Unit began an investigation into the activities of Jamie PRATT. (Hereafter referred to as "PRATT"). A reliable confidential source, hereafter referred to as "CS"[1], told investigators PRATT was a methamphetamine supplier and that he/she could purchase methamphetamine from her.

7.      Controlled purchases of methamphetamine were conducted from PRATT on four (4) occasions: January 16, 2019; February 6, 2019; February 7, 2019 and February 13, 2019. Beginning with the controlled purchases of methamphetamine in February of 2019, investigators began to ascertain that Demetrus SHELLEY (Hereafter referred to as "SHELLEY"), supplied PRATT with the methamphetamine being sold in the controlled transactions. This began to be suspected when PRATT was observed by investigators meeting with SHELLEY immediately after the controlled transaction on February 7, 2019; and both before and after the controlled transaction on February 13, 2019. When investigators observed SHELLY meeting with PRATT on February 13, 2019, SHELLEY was a passenger in a white Cadillac Escalade with a paper temporary tag

---

[1] CS is a confidential informant who is receiving consideration from the Springdale Police Department in the form of cash payments. CS's information has been corroborated through the use of surveillance, analysis of telephone toll records, and controlled purchases of methamphetamine by CS. As such, I believe CS to be a reliable confidential informant whose information can be trusted as true and accurate.

driven by a white female, who was later identified as Janet HAWES (hereafter referred to as "HAWES"). The vehicle was also registered to HAWES. Investigators followed the vehicle as HAWES and SHELLEY traveled to a residence located at 1185 Double Springs RD., Fayetteville, Arkansas after the February 13, 2019 transaction.

8. On February 27, 2019, the CS contacted PRATT for the purpose of obtaining more methamphetamine. PRATT informed the CS she had a family emergency, and instructed the CS to contact her source of supply. At that time she gave the CS the phone number 479-871-0037. Previous toll record analysis of PRATT's phone number had identified 479-871-0037 as a frequent contact of PRATT. A follow-up subpoena identified the subscriber of 479-871-0037 as Sam KIMMONS. The investigation of SHELLEY has revealed that Sam KIMMONS, AKA Samantha KIMMONS, is the current domestic partner of SHELLEY.

9. The CS called phone number 479-871-0037 on February 27, 2019, and spoke with a male. The CS arranged to buy approximately a quarter-pound of methamphetamine from the male later that afternoon. Shortly before the controlled drug buy occurred, investigators met with the CS and he/she made a recorded phone call to 479-871-0037. During the call, the CS spoke with a male and they agreed on a meet location in southwest Fayetteville. The male told the CS he needed ten (10) minutes to go to his "other spot" to "get it [methamphetamine] together", and then told the CS his "other spot" was near the agreed upon meet location.

10. At the agreed upon time at the agreed upon place, SHELLY arrived at the location and met with the CS, where a controlled methamphetamine transaction between the CS and SHELLEY occurred. During the meeting, SHELLEY confirmed the number the CS had called (479-871-0037) was his "direct number", and told the CS he had access to marijuana, cocaine, heroin, and ecstasy (MDMA), as well as methamphetamine. After the transaction concluded,

4

surveillance teams observed SHELLEY leaving the meet location and driving to 1185 Double Springs RD. SHELLEY was subsequently seen entering that residence. This residence is believed to be the "other spot" referred to on the recorded phone call with the CS. Based upon the events relayed above, I believe the "other spot" located at 1185 Double Springs Rd. to be a warehouse location or "stash house" for SHELLEY to store illegal drugs such as the marijuana, cocaine, heroin, ecstasy (MDMA), and methamphetamine SHELLEY claimed to the CS to have access.

11.     On March 11, 2019, the CS contacted SHELLEY on phone number 479-871-0037 and arranged to meet him for the purpose of buying more methamphetamine. Surveillance teams observed SHELLEY exit from the residence at 1185 Double Springs RD. approximately thirty (30) minutes before the upcoming operation was scheduled to occur. SHELLEY was accompanied HAWES, who went back inside the residence after SHELLEY left. Also observed in the driveway at 1185 Double Springs Rd. was the same Cadillac Escalade observed during the controlled drug buy operation on February 13, 2019. The vehicle's paper tag had been replaced with a permanent license plate identified as 842YDE. A records check identified the registered owner to be HAWES at 1185 Double Springs RD.

12.     SHELLEY left the residence driving a white GMC Yukon bearing Arkansas vehicle license 748XKD. A records check of 748XKD showed the vehicle was registered to Samantha KIMMONS at 196 Killdeer Dr. in Farmington. SHELLEY was followed to the residence on Killdeer Dr. in Farmington, Arkansas, which subsequent investigative efforts confirmed this to be residence where SHELLEY lives.

13.     Before the scheduled controlled transaction, SHELLEY contacted the CS and informed he would arrive at the predetermined meet location soon. FBI surveillance in the area where the transaction was to occur observed the white 2005 Cadillac Escalade from the Double

5

Springs Rd. residence arrive at the meet location being driven by HAWES. HAWES circled the parking lot at the meet location appearing to conduct counter-surveillance. SHELLEY arrived a short time later and met with the CS, and then they both met with HAWES inside the Escalade. There, the CS provided SHELLEY with law enforcement funds. HAWES handed SHELLEY the methamphetamine, and then SHELLEY handed the methamphetamine to the CS. When the transaction was complete, all parties returned to their respective vehicles and left the meet location. Before SHELLEY left the meet location; however, he circled the parking lot as if conducting counter-surveillance.

14. In a separate, previous investigation by the Rogers, Arkansas and Springdale, Arkansas police departments, Cruz MARSHALL and Ray McDANIEL were identified as traffickers of marijuana in Northwest Arkansas. A confidential informant, who will be identified for purposes of this Affidavit as "CI."[2] In 2017, CI reported to investigators that he/she had been employed as a courier of marijuana for McDANIEL, transporting marijuana from Oregon to Arkansas on a monthly basis. The CI identified MARSHALL as an individual in Arkansas who sold marijuana for McDANIEL and identified the vehicle driven by MARSHALL as a red Hummer H2 with Alabama license plates.

15. On October 9, 2017 the Rogers Police Department served a search warrant issued by the State of Arkansas on MARSHALL'S residence. Among the items found were firearms, a money counter, a bill of sale for a vehicle purchased in Oregon and bank statements showing large balances of money. MARSHALL was arrested by the Rogers, Arkansas police department based upon evidence gained from the search warrant on or about October 11, 2017. Based upon this and

---

[2] CI's information was corroborated as true and accurate through surveillance and analysis of telephone toll records. As such, I believe CI to be an informant whose information can be trusted as true and accurate.

other information, investigators requested airline flight records which showed McDANIEL made a trip to Oregon on a ticket booked by MARSHALL and that they subsequently traveled to Oregon together on tickets paid for with cash.

16.     On March 14, 2018, McDANIEL was arrested by the Springdale Police Department for possession of approximately 1/3rd of a pound of marijuana with the intent to distribute it. Charges were filed in the State of Arkansas which currently remain pending. Based upon all of these facts, I believe based on my training and experience that MARSHALL and McDANIEL are involved in distributing marijuana together. Additionally, for the reasons that follow, I believe that MARSHALL and McDANIEL are involved in selling controlled substances with SHELLEY.

17.     The investigation has revealed as far back as 2017 that MARSHALL is in a romantic relationship and shares a child with Elizabeth CORRON (hereafter, "CORRON"). As of March, 2019, CORRON has her telephone number of 479-263-9207 posted on her social media accounts.

18.     An examination of CORRON's and SHELLEY's toll records showed a common caller between them. The phone number of 414-477-0082, the target telephone number here, was found to have called both CORRON and SHELLEY multiple times. The subscriber information for the target telephone was subpoenaed. The information showed the phone to be on the Verizon network, and showed the subscriber was Nabil MUSAID. MUSAID is the registered owner of the red Hummer H2 with Alabama vehicle license of 48AS770 operated by MARSHALL in Northwest Arkansas. A records check of ALGAHMIE showed he had was incarcerated in 2016, in Memphis, Tennessee, for Possession of Marijuana with Purpose to Deliver. I believe based on my training and experience that the only individual who would be in touch with both CORRON and SHELLEY to be MARSHALL. Association between MARSHALL, MCDANIEL, and

7

SHELLEY was further corroborated, as demonstrated below. My belief that MARSHALL is the user of the target telephone number was confirmed by the discovery of a police report at the Rogers, Arkansas police department filed by CORRON against MARSHALL for domestic battery-related offenses on December 25, 2018. CORRON provided the responding police officer the target telephone number as the number for MARSHALL.

19.   A federal search warrant for the location data from SHELLEY's phone was signed by the Honorable Judge Erin L. Wiedemann of the Western District of Arkansas on March 22, 2019. The location of SHELLEY's telephone showed investigators SHELLEY'S movements, allowing investigators to conduct surveillance of SHELLEY. At approximately 10:00 PM on March 23, 2019, SPD Detective John Mackey began surveillance of SHELLEY's residence (196 Killdeer in Farmington, Arkansas). Detective Mackey observed the red Hummer H2 vehicle associated with MARSHALL parked in the driveway next to a vehicle known to be regularly driven by SHELLEY.

20.   At approximately 11:03 PM, Detective Mackey observed SHELLEY and MARSHALL exit from the Killdeer residence; SHELLEY got into one of the vehicles known to be driven by him on a regular basis, and MARSHALL got into his Hummer H2. At approximately 11:05 PM, both vehicles left the residence and drove away in tandem. Approximately ten (10) minutes later, a location-ping showed SHELLEY was in the area of N. Double Springs RD in Fayetteville, which is the location of his suspected stash-house. Detective Mackey conducted surveillance of the residence at approximately 11:20 PM and observed MARSHALL and SHELLEY'S vehicles parked in the stash-house driveway on N. Double Springs Rd.

21.   At approximately 9:00 AM on March 25, 2019, investigators conducting surveillance of Straight Right Boxing Gym in Springdale, Arkansas observed vehicles known to

8

be driven by SHELLEY, MARSHALL, and Ray MCDANIEL parked in the lot. A location-ping from SHELLEY's phone confirmed he was present. At approximately 10:25 AM, investigators observed SHELLEY, MARSHALL, and MCDANIEL exit the gym and have a conversation in the parking lot for approximately fifteen (15) minutes before leaving in their respective vehicles. Investigators took photographs of SHELLEY, MARSHALL, and MCDANIEL as they met.

22.    SHELLEY, MARSHALL and MCDANIEL left the gym at the same time and drove in tandem from the location. Investigators attempted to follow them, but were unsuccessful due to traffic. Approximately twenty (20) minutes after leaving the boxing gym, investigators located MARSHALL and MCDANIEL (at 11:05 AM) at Final Touch Detail Shop in Johnson, Arkansas. MARSHALL and MCDANIEL were observed inside the business through an open bay door, and they appeared to be sitting with two (2) other males. One of the males was later identified as Dejuan MORROW (hereafter referred to as "MORROW"). MCDANIEL was observed leaving the business at approximately 11:25 AM. MCDANIEL walked to a vehicle identified as belonging to MORROW, and placed an object in the back seat. I believe based on my training, experience, and knowledge of this investigation that this was likely a marijuana or other drug transaction.

23.    At approximately 11:27 AM, MORROW walked out of the business accompanied by MARSHALL. MORROW got into his vehicle and left the parking lot, driving south into Fayetteville. Surveillance of the detail shop was discontinued to avoid being spotted by members of the DTO.

24.    Based upon the above paragraphs, and my training and experience, I believe that MARSHALL is the user of the target telephone and that MARSHALL is involved in a conspiracy to distribute marijuana and other controlled substances with at least SHELLEY and MCDANIEL.

I believe that the location of the target telephone will allow investigators to further confirm this belief and to obtain evidence of the conspiracy against MARSHALL and others.

25. Surveillance of MARSHALL has been difficult; on at least one (1) occasion, MARSHALL ran a red light in front of investigators in what appeared to be an effort to spot surveillance. Investigators have also attempted to identify MARSHALL's residence through records checks and other investigative means; however, they have been unsuccessful. It has been discovered that MARSHALL uses CORRON's address as his own, but surveillance has shown he floats from place-to-place and is likely staying at an as-of-yet unknown location. As stated in previous paragraphs, MARSHALL uses a phone subscribed to someone else, he drives a vehicle registered to someone else, and makes a concerted effort to hide his activities and avoid detection.

26. In my experience, the general location of the target telephone gathered from cell site/sector location, GPS location, or other means, can yield evidence which is relevant and material to an ongoing criminal investigation of the specified offenses. Such information includes leads relating to: (1) the geographic breadth of the suspected drug trafficking cell; (2) the transportation routes and means for trafficking narcotics and drug proceeds from one geographic area to another; (3) other geographic locations where a drug organization may be engaging in similar conduct; (4) the geographic location of "stash" houses; and (5) the geographic locations where meetings are held to exchange narcotics and money. Further, the geographic location of the target telephone can be used to corroborate the observations of surveillance agents. Surveillance agents can compare observations of the user of the target telephone with geographic information in order to verify the identification and location of the user of the target telephone.

10

27.     Specific to this case, I believe the general location of the target telephone gathered from cell site/sector location, GPS location, or other means, can yield evidence which is relevant and material to an ongoing criminal investigation of the specified offenses.

28.     Given the ongoing nature of this investigation, immediate notification of this warrant will have an adverse result. Accordingly, delayed notice of 30 days is requested under 18 U.S.C. § 3103a.

29.     Based on the same concerns that knowledge of the investigation would jeopardize its effectiveness, I request that this affidavit, the application, and the order as well as any other related documents be sealed pursuant to the provisions of the United States District Court for the Western District of Arkansas general rule 7.

30.     In my training and experience, I have learned that VERIZON WIRELESS is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulation on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call

11

made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

31.     Based on my training and experience, I know that VERIZON WIRELESS can collect E-911 Phase II data about the location of the target cell phone, including by initiating a signal to determine the location of the target cell phone on the VERIZON WIRELESS network or with such other reference points as may be reasonably available.

32.     Based on my training and experience, I know that VERIZON WIRELESS can collect cell-site data about the target cell phone.

### AUTHORIZATION REQUEST

33.     Based on the foregoing, I request that the Court issue the proposed search warrant to track the target cell phone for a period of 45 days, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

34.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the target cell phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510)

12

or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. 18 U.S.C. § 3103a(b)(2).

35.     I further request that the Court direct VERIZON WIRELESS to disclose to the government any information described in Attachment B that is within the possession, custody, or control of VERIZON WIRELESS. I also request that the Court direct VERIZON WIRELESS to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with VERIZON WIRELESS's services, including by initiating a signal to determine the location of the target cell phone on VERIZON WIRELESS's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate VERIZON WIRELESS for reasonable expenses incurred in furnishing such facilities or assistance.

36.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the target cell phone outside of daytime hours.

37.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed pursuant to the provisions of the United States District Court for the Western District of Arkansas general rule 7. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the

13

investigation. Accordingly, there is good cause to seal these documents because their premature

disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Brenan T. Despain
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on _____4|19|19_____, 2019

ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE
WESTERN DISTRICT OF ARKANSAS

14